UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MOLLY SWITZER,

        Plaintiff,

v.

COMPUTER SCIENCES CORP.,

        Defendant.
_____/

CASE NO. 08-14772

HON. MARIANNE O. BATTANI

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Before the Court is Defendant's Motion for Summary Judgment (Doc. No. 26). Computer Sciences Corporation maintains that the claims of discrimination and retaliation brought by its former employee, Plaintiff Molly Switzer, fail as a matter of law. The Court heard oral argument on September 16, 2010, and at the conclusion of the hearing took this matter under advisement. For the reasons that follow, Defendant's Motion is **GRANTED in part** and **DENIED in part**.

**I. FACTS**

Plaintiff Molly Switzer worked as a systems administrative associate until July 3, 2009, for her former employer, Defendant Computer Sciences Corporation (CSC). While she was employed, Switzer filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) on January 3, 2007, alleging she was denied a promotion to senior systems administrator in March 2006 because of her race and gender in violation of federal and state law. She later filed a charge of retaliation with the EEOC on July 2,

1

2008, alleging that Defendant retaliated against her in violation of federal and state law by removing her from her position as Systems Administrator in June 2007. The facts giving rise to her claims follow.

In November 2001, Switzer began working as a UNIX Help Desk administrator on the General Dynamics Land Systems (GDLS) account. In July 2005, CSC's Director of Business and Strategic Programs, who was in charge of the GDLS account, Susan Schoenherr, approved Switzer's promotion to Member Technical Staff B in Global Transformation Solutions for CSC's GDLS account. Def.'s Ex. 7. Plaintiff received a $10,000 increase in pay. At that time, she was the only Oracle Systems Administrator on the GDLS account.

In August 2005, Michael Deittrick became Plaintiff's supervisor. A few months later, in November 2005, Plaintiff asked for a pay raise and a title upgrade, which she did not receive.

Deittrick subsequently recommended a second system administrator be hired for the GDLS account, and the position was posted on March 9, 2006. The position was identified as a senior member technical staff, at a Grade SO4. According to Switzer, it involved the same duties she performed, but at a significantly higher grade level and salary. Plaintiff applied for the position, but was not interviewed despite being told by Deittrick that she was qualified. Switzer Dep. at 71-72.

On March 12, 2006, Wiah Sipley, an African American male, posted a cover letter with his resume on a website specializing in IT jobs. Computer Merchant, a placement agency, reviewed his resume, and forwarded it to Defendant for consideration for a different position. CSC did not interview Sipley for that position because he was not

2

qualified; however, Deittrick thought Sipley might be qualified for the Oracle position and interviewed Sipley by phone. Deittrick and Schoenherr subsequently met Sipley for lunch to discuss the job.

Thereafter, CSC sent Sipley an application to complete and authorization for a background check. Sipley signed and returned the document on March 15, 2006. An offer to Sipley identifying his position as Senior Member Technical Staff was extended on March 20, 2006, with a salary of $65,000. Def.'s Ex. 10. Sipley accepted the position on March 21, with a start date of April 3, 2006.

According to Plaintiff, on March 23, 2006, Deittrick told her that she would not be promoted to the senior administrative position, that Sipley was hired in accordance with CSC affirmative action plans and that an African-American had to be hired. Plaintiff asserts that Sipley lacked basic understanding of Oracle, and she needed to train him. She eventually complained to HR about Defendant's failure to hire her for the senior systems position, and asked to be moved up to that level. Plaintiff also spoke to her then-supervisor, Greg Harvey, about the situation. Plaintiff ultimately filed a charge of discrimination with the EEOC, which she signed on January 3, 2007.

In June 2007, Plaintiff was benched–that is she no longer worked on a specific account. In August 2007, Plaintiff began working on the Sun Microsystems account. Plaintiff filed her retaliation charge on July 3, 2008, asserting that her reassignment was retaliatory.

## II. STANDARD OF REVIEW

Rule 56(c) states that summary judgment "should be rendered if the pleadings, the discovery, and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). There is no genuine issue of material fact if there is no factual dispute that could affect the legal outcome on the issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). In other words, the movant must show that it would prevail on the issue even if all factual disputes are conceded to the nonmovant. Additionally, for the purposes of deciding on a motion for summary judgment, a court must draw all inferences from those facts in the light most favorable to the nonmovant. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## III. ANALYSIS

Plaintiff advances discrimination claims based on race and gender based on CSC's failure to promote her to senior system administrator and instead hiring a less qualified African American male. She claims Defendant retaliated against her after she filed a complaint by removing her from the GDLS account.

### A. DISCRIMINATION CLAIMS

Both Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and the Elliott-Larsen Civil Rights Act, MICH. COMP. LAWS § 37.2201 *et seq.* ("ELCRA") prohibit race-based and gender-based discrimination in the workplace. See 42 U.S.C. § 2000e-2(a)(1); MICH. COMP. LAWS § 37.2202(1)(a). Before turning to the merits, the Court considers whether the statute of limitations bars the claims.

### 1. Statute of Limitations

A Title VII plaintiff in Michigan must "file a charge with the Equal Employment Opportunity Commission (EEOC). . .300 days 'after the alleged unlawful employment practice occurred.'" Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 104-105 (2002); 42 U.S.C. § 2000e-5(e)(1). Under ELCRA, the statute of limitations is three years. MICH. COMP. LAWS § 600.5805(10). Defendant maintains that Plaintiff's request for a pay increase and promotion on November 10, 2005, went unanswered and therefore was denied as of the request date. It concludes that Switzer's law suit, which was filed on November 12, 2008, was untimely for purposes of ELCRA and Title VII. The Court disagrees.

Defendant mischaracterizes the adverse action as Plaintiff's request for consideration of a salary increase on November 10, 2005. The request for a salary increase in not an adverse action; the hiring of Sipley is the contested action. The limitations period begins to run when "an unlawful employment practice occurs." Therefore, the proper start to the time clock is the date Sipley was hired. Switzer received notice of that decision on March 23, 2006. Plaintiff filed her charge on January 3, 2007. Therefore, her discrimination claims can proceed.

### 2. Merits

#### a. Prima facie case of discrimination

One way in which a plaintiff may demonstrate unlawful discrimination is through direct evidence. "Direct evidence of discrimination is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the

employer's actions." Wexler v. White's Fine Furniture, Inc., 317 F.3d 564, 570 (6th Cir. 2003) (en banc) (addressing discrimination under the ADEA); see Sniecinski v. Blue Cross and Blue Shield of Michigan, 469 Mich. 124, 132-33 (2003). When deciding if a comment is evidence of discrimination, the Court must consider "whether the comments were made by a decision maker or by an agent within the scope of his employment; whether they were related to the decision-making process; whether they were more than merely vague, ambiguous, or isolated remarks; and whether they were proximate in time to the act of termination." Cooley v. Carmike Cinemas, 25 F.3d 1325, 1330 (6th Cir.1994).

Plaintiff asserts that her conversation with Deittrick satisfies the direct evidence standard relative to her claim of race discrimination. A close look at her actual deposition testimony shows that it does not. When asked about her understanding of Sipley's hiring, Switzer testified as follows:

> [Deittrick] told me he was sorry that I didn't get the position, but Wiah Sipley, an African-American man, had been hired for the position, and he [Deittrick] was following CSC affirmative action plans, and that Wiah was – you know, I expressed my concern that I've been doing the position for months now, why wasn't I given the opportunity to even be interviewed for it. And [Deittrick] said, well, bottom line, Mr. Sipley was more qualified than you were. He even went on to say that [Sipley] would be the wind beneath my wings and we would soar together in this new role.

Def.'s Ex. 3, Pl.'s Dep at 72.

The testimony itself undermines Plaintiff's characterization. Here, to the extent that Deittrick's statement is relevant, it would not "*require* [ ] the conclusion that unlawful discrimination was even a motivating factor in the employer's actions." Sniecinski, 469 Mich. at 133-34 (emphasis added). It merely reflects that the company thought Sipley was more qualified than Switzer and that race was considered in the manner required by

6

company policy. Accordingly, the Court directs its attention to the sufficiency of Switzer's circumstantial evidence of race and gender discrimination.

In the absence of direct evidence of discrimination, the Court's analysis in determining the merit of Plaintiff's discrimination claims Title VII and ELCRA follows the burden-shifting framework articulated by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Jackson v. Quanex Corp., 191 F.3d 647, 658 (6th Cir. 1999) (nothing that "claims of alleged race discrimination brought under the Elliot-Larsen Act under the same standards as claims of race discrimination brought under Title VII.").

Under McDonnell Douglas, to establish a prima facie case that a defendant violated Title VII, the plaintiff must show that she was a member of the protected class, she was qualified for her position, that she suffered an adverse employment action, and that she was treated differently than similarly-situated, nonprotected employees. Laderach v. U-Haul of Northwestern Ohio, 207 F.3d 825, 828 (6th Cir. 2000); Brown v. State of Tennessee, 693 F.2d 600, 603 (6th Cir. 1982) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)).

If the plaintiff establishes a *prima facie* case, a presumption that the defendant discriminated against the plaintiff arises, and the defendant then bears the burden of putting forth a "legitimate, nondiscriminatory reason" for the complained of adverse treatment. Clay v. United Parcel Serv., Inc., 501 F.3d 695, 706 (6th Cir. 2007) (citation omitted). If the defendant satisfies this burden, the presumption of discrimination disappears, and the plaintiff must show that the defendant's proffered nondiscriminatory reason was a pretext for discrimination. Id. at 706-07. Throughout this burden-shifting framework, the plaintiff bears the ultimate burden of proving, by a preponderance of the

evidence, that she suffered illegal discrimination.  Id. at 707.

To establish a prima facie case of race discrimination, a plaintiff typically shows that she is a member of a racial minority.  Arendale v. City of Memphis, 519 F.3d 587, 603 (6th Cir. 2008).  As a nonminority, Switzer alleges "reverse discrimination," and she must "prove background circumstances to support the suspicion that the defendant is that unusual employer who discriminates against the majority." Id. (internal quotation marks and alterations omitted).

In challenging Switzer's claims, Defendant contests whether Switzer suffered an adverse employment action.  Specifically, CSC contends that Sipley was hired to do the same job as Plaintiff.  Consequently, she cannot establish all of the elements of the prima facie case.  The documents undermine Defendant's assertion.

Switzer has advanced sufficient evidence to show a genuine issue of material fact as to whether Sipley was hired as a senior systems administrator; a position that would have been a promotion for Switzer, including the job requisition, which was for a senior member technical staff, and the offer letter sent to Sipley, his job title on his performance review--system administrator senior professional, and his salary grade.  See Pl.'s Ex. 15. In contrast, Plaintiff's salary grade reflected her status as a "system admin associate professional."  Id.

Circumstantial evidence of gender discrimination likewise prevents an award of summary judgment.  Switzer is female, she applied for the senior systems administrator job, she was qualified for the position, and she was denied the promotion, which was awarded to a male.

### b. Legitimate reason

According to CSC, Sipley was more qualified for the position.

### c. Pretext

Switzer asserts that Defendant's reasonable business judgment explanation is self-serving, and claims that the idiosyncratic and questionable nature of the reason given for hiring Sipley shows it is merely a pretext for discrimination. The decisional process is unworthy of credence in light of Defendant's rush to hire Sipley without conducting a background and reference check. The posting was open for two months, yet Defendant approved an offer to Sipley in less than a week without verifying the information in his resume or checking references.

In White v. Baxter Healthcare Corp., 533 F.3d 381, 393 (6th Cir. 2008), the appellate court observed:

> plaintiff will usually demonstrate pretext by showing that the employer's stated reason for the adverse employment action either (1) has no basis in fact, (2) was not the actual reason, or (3) is insufficient to explain the employer's action. See Imwalle v. Reliance Med. Prods., Inc., 515 F.3d 531, 545 (6th Cir. 2008) (citing Manzer, 29 F.3d at 1084). However, the plaintiff may also demonstrate pretext by offering evidence which challenges the reasonableness of the employer's decision "to the extent that such an inquiry sheds light on whether the employer's proffered reason for the employment action was its actual motivation." Wexler v. White's Fine Furniture, Inc., 317 F.3d 564, 578 (6th Cir. 2003) (en banc); see also Burdine, 450 U.S. at 259, 101 S.Ct. 1089 ("The fact that a court may think that the employer misjudged the qualifications of applicants does not in itself expose him to Title VII liability, although this may be probative of whether the employer's reasons are pretexts for discrimination."); Loeb v. Textron, Inc., 600 F.2d 1003, 1012 n. 6 (1st Cir.1979) ("The reasonableness of the employer's reasons may of course be probative of whether they are pretexts. The more idiosyncratic or questionable the employer's reason, the easier it will be to expose as a pretext, if indeed it is one.").

The White Court concluded that when the facts afford a basis for a factfinder to conclude

that a "reasonable employer would have found the plaintiff to be significantly better qualified for the job, but this employer did not, the factfinder can legitimately infer that the employer consciously selected a less-qualified candidate-something employers do not usually do, unless some other strong consideration, such as discrimination, enters into the picture." Id. (citing Aka v. Washington Hosp. Ctr., 156 F.3d 1284, 1294 (D.C. Cir. 1998).

Here, although Plaintiff holds a subjective belief that she is better qualified than Sipley, the Court finds that the reasoning given by CSC for hiring Sipley cannot be deemed unreasonable as a matter of law. Sipley had a significantly greater education; he had greater experience as an Oracle administrator; and had numerous Oracle certificates. He was better qualified on paper. In addition, the explanation for Sipley's salary is reasonable–he had been making more money than Plaintiff, and to secure Sipley's acceptance, CSC offered him a higher salary. In sum, there is no evidence that the articulated explanation was a pretext for sex-based or race-based discrimination.

Accordingly, the Court **GRANTS** CSC's Motion for Summary Judgment of Switzer's race-based discrimination claims (Counts II and V) and her sex-based discrimination claims (Counts I and IV).

### B. ELCRA retaliation claim

Switzer's claim of retaliation under state law is not subject to dismissal because she filed it within the three-year limitation period set forth in the statute. Accordingly, the Court addresses the merits.

Section 701 of the Civil Rights Act, MICH. COMP. LAWS § 37.2701, provides, in part:

Two or more persons shall not conspire to, or a person shall not:

> (a) Retaliate or discriminate against a person because the person has opposed a violation of this act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this act.

To establish retaliation under ELCRA, the plaintiff must demonstrate that "(1) that the plaintiff engaged in a protected activity, (2) that this was known by the defendant, (3) that the defendant took an employment action adverse to the plaintiff, and (4) that there was a causal connection between the protected activity and the adverse employment action." Meyer v. City of Center Line, 619 N.W.2d 182, 188 (Mich. Ct. App. 2000).

Switzer claims that she was retaliated against as a result of her filing her claims of discrimination both internally and on January 2007 with the EEOC. She was terminated from her systems administrator position on the General Dynamics account and put on the bench at the end of June 2007. There is no dispute that Switzer engaged in protected activity; however, CSC maintains that she cannot meet the other elements.

### 1. Knowledge

Although Defendant claims that the individuals involved in the reassignment had no knowledge of Plaintiff's complaint, it is undisputed that the EEOC had served the complaint on the company. Plaintiff told her supervisor that she had filed the complaint in April 2007, and other employees indicated awareness of the complaint. Therefore, she has met her burden as to this element.

### 2. Adverse Employment Action

The parties disagree as to whether Switzer suffered a materially adverse employment action. There is no dispute that she received the same rate of pay after reassignment to the Sun account. There is no dispute that she previously had agreed to be reassigned to the Sun account for a brief period.

Nevertheless, the Court finds a question of fact as to whether her reassignment constituted an adverse employment action. No exhaustive list of adverse employment actions exists, Chen v. Wayne State Univ., 771 N.W.2d 820 (Mich. Ct. App. 2009), and the facts of this case demonstrate that the reassignment was "more than a mere inconvenience or minor alteration of job responsibilities." Id. First, Switzer was required to locate another position on her own. She had to be interviewed and undergo a background check before she could begin her new job. The new position entailed less responsibility and was outside the Oracle expertise she had developed. Finally, after her reassignment, Switzer was subjected to a barrage of criticism of her job performance and was no longer using her Oracle skills, which she developed over a period of time.

### 3. Causal Connection

Plaintiff relies on the manner in which she was benched as well as the benching itself to show a causal connection. Switzer was terminated from her position without reason in a late night phone call from a manager. CSC issued a termination notice the next day and sent her personal belongings home in a box.

The benching occurred without explanation for her removal. In contrast to the typical benching, which is the result of financial concerns or client complaints, here,

Plaintiff had received a good evaluation just a few months earlier, in March 2007. Defendant's stated reasons for benching--performance and reliability were not raised in Plaintiff's performance review.  To the contrary, she was rated satisfactorily, and she received positive feedback from the customer. Pl.'s Ex. 13.  There is no contemporaneous documentation of any performance deficiencies, and it appears that the problems suggested by Defendant had been addressed well in advance of Plaintiff's March evaluation.  There is no testimony that Defendant broached performance issues with Plaintiff in the months leading up to her benching.

Therefore, the Court finds that Plaintiff has advanced sufficient evidence of a causal connection. Specifically, Plaintiff presented evidence that Defendant, who judged her job performance as effective in March 2007, viewed it as unsatisfactory several months later without any explanation. This supports the inference that her formal discrimination complaint caused the change in how Defendant viewed Plaintiff's worth.  See McLemore v. Detroit Receiving Hosp. and University Medical Center, 493 N.W.2d 441 (Mich. Ct. App. 1992) (finding similar circumstances, viewed in a light most favorable to the plaintiff, supported the inference that she was laid off in retaliation for charging discrimination). Accordingly, the Court denies CSC's Motion for Summary Judgment on Plaintiff's ELCRA retaliation claim.

## IV.   CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendant's motion as to Plaintiff's discrimination claims (Counts I, II, IV, V) and **DENIES** Defendant's motion as to the ELCRA retaliation claim (Count VI).

**IT IS SO ORDERED.**

                                                  s/Marianne O. Battani
                                                  MARIANNE O. BATTANI
                                                  UNITED STATES DISTRICT JUDGE

Date: November 4, 2010

## CERTIFICATE OF SERVICE

Copies of this Order were mailed and/or electronically filed to counsel of record on this date.

                                                  s/Bernadette M. Thebolt
                                                  Case Manager